# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENTELER M.,[1] <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Deputy Commissioner of Operations of Social Security, <br> Defendant. | Case No. CV 17-08662-RAO <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Benteler M. ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is REVERSED and the matter REMANDED for further proceedings.

///

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. **PROCEEDINGS BELOW**

On August 5, 2013, Plaintiff applied for DIB alleging disability beginning November 7, 2012. (Administrative Record ("AR") 90-92.) His application was denied initially on March 4, 2014, and upon reconsideration on May 29, 2015. (AR 121, 129.) Plaintiff filed a written request for hearing, and a hearing was held on December 14, 2016. (AR 35, 142.) Represented by counsel, Plaintiff appeared and testified, along with an impartial medical expert and an impartial vocational expert. (AR 37-89.) On February 1, 2017, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] from November 7, 2012 through the date of decision. (AR 27-28.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on November 30, 2017. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had engaged in substantial gainful activity since November 7, 2012, his alleged onset date ("AOD"). (AR 20.) The ALJ further found that Plaintiff engaged in substantial gainful activity from January 2014 through December 2014, but Plaintiff did not engage in substantial gainful activity after December 31, 2014. (*Id.*) At **step two**, the ALJ found that Plaintiff has the following severe impairments: heart disease (ischemic heart disease and atrial fibrillation); diabetes mellitus; and carpal tunnel syndrome. (AR 21.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . with additional limitations. The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours in an 8-hour workday, and he can stand and/or walk for 6 hours in an 8-hour workday. The claimant can frequently bend, stoop, crouch, and crawl. The claimant is unable to climb ladders, ropes, and scaffolds. The claimant can frequently handle and finger. The claimant can frequently push and/or pull. The claimant must avoid exposure to unprotected heights, moving machinery, and other hazards. The claimant can frequently push and/or pull using foot controls. He has no other limitations.

(AR 22.)

At **step four**, based on testimony from a vocational expert, the ALJ found that Plaintiff was able to perform his past relevant work as a financial institution manager and a foreclosure clerk, and thus the ALJ did not proceed to step five. (AR 27.) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date of decision. (AR 27-28.)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

///

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ erred in evaluating the medical opinion evidence; (2) whether the ALJ erred in his adverse credibility finding; and (3) whether the ALJ erred in the RFC assessment. (*See* Joint Stipulation ("JS") 3.) For the reasons below, the Court agrees with Plaintiff regarding the credibility determination and remands on that ground.

### A. The ALJ's Credibility Determination Is Not Supported By Substantial Evidence

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons for rejecting his subjective testimony. (*See* JS 26-30.) The Commissioner contends that the ALJ provided legally valid reasons for rejecting Plaintiff's testimony. (*See* JS 33.)

#### 1. Plaintiff's Testimony

Plaintiff testified that he had worked for 21 years as an operations manager at Bank of America, until November 2012. (AR 65.) According to Plaintiff, this job

was "[h]ectic" and required "very detailed" work. (AR 72.) Plaintiff stopped working due to heart problems, including a heart attack, and he also needed to fix his atrial fibrillation. (*See* AR 73-74.) Plaintiff took a leave of absence in 2013 and received short term disability. (AR 66; *see* AR 67-70.)

Plaintiff last worked handling loan foreclosures for six months, from January until June 2014. (AR 63-64.) He went back to work "[f]or the insurance." (AR 74.) This position was less stressful than his job as an operations manager. (*Id.*) Although the job was "a lot easier" than his old position, he was not able to physically do it. (*See* AR 75-76.) Plaintiff tired easily and walking from the parking lot to his desk required "a lot of effort." (AR 75.) Plaintiff also had to use the bathroom "all the time," and became dizzy when standing up. (*Id.*) Plaintiff stopped working because he needed another ablation surgery. (AR 71-72.)

Since Plaintiff stopped working, he still gets short of breath while sitting down. (AR 76.) Plaintiff testified that he is "constant[ly] dizzy." (AR 76.) Plaintiff explained that he has chest pain every day, which requires him to stop what he's doing and relax. (*Id.*) Plaintiff thinks the pain occurs because he takes "a lot of medication," and his doctor has been prescribing different kinds to try to figure out what is causing his pain. (*See* AR 76-77.) He has also been prescribed medication for his shortness of breath and high blood pressure. (*See* AR 77-78.) Three weeks prior to the hearing, Plaintiff underwent a blood test, and he was called back to the emergency room due to a kidney function. (AR 79.)

Plaintiff stated that he lives with his adult daughter. (*Id.*) During the day, Plaintiff sits down and watches television because he tires easily. (*Id.*) He only leaves the house every other day to take his dog to the park, where the dog can run free. (AR 80.) Plaintiff explained that he parks his car next to the entrance of the dog park because if he parks too far, he has to stop a few times while walking. (*Id.*) Plaintiff can comfortably walk half a block. (*Id.*)

///

| | |
|---|---|
| 1 | Plaintiff testified that he goes to the gym every other day to do a repetition of the lowest weights. (*Id.*) Plaintiff does chest exercises and no cardio. (*Id.*) Plaintiff also does weight exercises for his legs because he was "getting weak." (AR 80-81.) |

Plaintiff testified that he goes to the gym every other day to do a repetition of the lowest weights. (*Id.*) Plaintiff does chest exercises and no cardio. (*Id.*) Plaintiff also does weight exercises for his legs because he was "getting weak." (AR 80-81.)

Plaintiff goes to the doctor every month. (AR 81.) He sees a cardiologist, a kidney specialist, and sometimes an internal medicine doctor. (*Id.*)

Plaintiff stated that he has neuropathy and carpal tunnel in his right hand. (*Id.*) He explained that he feels a constant burning sensation, tingling, and numbness every day. (*Id.*) Plaintiff's signature is "scribbling" now because it is hard to control his writing. (*See* AR 82.) Plaintiff also stated that it would be hard to use a typewriter or computer keyboard. (*Id.*) He sometimes sends text messages by using his left hand. (*Id.*) Plaintiff asserted that he can lift between 10 and 20 pounds with his right hand. (*Id.*) According to Plaintiff, he cannot do his past jobs because he cannot type, walk around to supervise people, or hold files. (AR 82-83.)

Plaintiff testified that his neuropathy is getting worse, and he has been receiving weekly acupuncture for it. (AR 83.) He also thinks he has neuropathy in his feet. (*Id.*)

Plaintiff explained that he sleeps only "a couple hours" each night because he has to lie flat with four pillows to help his breathing, but he cannot sleep when lying flat. (*See id.*)

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the

ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

The ALJ determined that the record "does not fully corroborate the disabling severity of symptoms and degree of limitation alleged," and "[a] careful review of the medical and other evidence of record has revealed stark contrasts between [Plaintiff's] allegations and the objective and clinical findings." (AR 23.) The ALJ concluded that Plaintiff's subjective allegations "are not fully consistent with the record evidence," so he gave "very limited weight" to Plaintiff's testimony. (AR 26.) The ALJ relied on the following reasons: (1) Plaintiff's improvement after surgery; (2) activities of daily living; and (3) lack of objective medical evidence to support the alleged severity of symptoms. (*See* AR 23-26.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1: Plaintiff's Improvement After Surgery

The ALJ noted that Plaintiff's cardiovascular impairments progressively improved after his November 2012 surgery. (AR 23.) The ALJ specifically observed that Plaintiff was able to return to work in 2014 without restrictions after his surgery, and he handled his training assignment without difficulty. (*See* AR 23-25.) However, Plaintiff testified that he had to stop working within months of returning to work because he needed ablation surgery. (AR 71.) Plaintiff explained that he was able to perform the job with respect to his knowledge, but he could not perform it with respect to his physical well-being. (AR 75-76.) "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe

enough to preclude him from *maintaining* substantial gainful employment." *Lingenfelter*, 504 F.3d at 1038. Reliance on a brief period of employment is "especially unconvincing" when the claimant attempted to work only due to extreme economic necessity. *Id.* at 1038-39. Here, Plaintiff testified that he did not think his condition had improved enough so that he could work, but he went back to work "[f]or the insurance." (AR 74.)

The ALJ also noted that Plaintiff's post-surgical course of treatment was "decidedly conservative," including prescription medication and routine follow-up cardiovascular treatment. (AR 23.) An ALJ may discount a claimant's testimony based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received"). But this "conservative" treatment after surgery is relevant only to Plaintiff's cardiovascular impairments. The ALJ had determined that Plaintiff's diabetes mellitus and carpal tunnel syndrome were severe impairments. (AR 21.) At the hearing, Plaintiff also testified about pain, numbness, and neuropathy in his right hand, which would prevent him from performing all of his required job tasks. (*See* AR 81-82.) Improvement in Plaintiff's cardiovascular condition and conservative cardiovascular treatment are not valid reasons to discount all of Plaintiff's testimony about his other symptoms and conditions.

In sum, the Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Activities of Daily Living

The ALJ noted that, "despite his condition, [Plaintiff] was still able to perform yard work such as sweeping the leaves and putting away the trash." (AR 25.) The

8

ALJ determined that this, along with other evidence, demonstrated that Plaintiff's impairments "are not as severe as alleged." (*Id.*)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The fact that Plaintiff performs some daily activities does not detract from his overall credibility, as the record does not show that this consumes a substantial part of Plaintiff's day. Further, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). Indeed, Plaintiff's Exertion Questionnaire states that when Plaintiff sweeps leaves and picks up trash, he "[has] to rest or take breaks."
///

(AR 262.) Plaintiff explains that he also requires breaks when he does other household chores. (*See* AR 261-63.)

Additionally, the ALJ observed that an evaluating physician noted that Plaintiff "was providing contradicting statements regarding his ability to work," as Plaintiff reported difficulties with some activities, but he also reported that he exercised 4 times a week.³ (AR 25.) Because the record relied upon by the ALJ merely states that Plaintiff "exercised 4 times a week"—without evidence of what, exactly, his exercise activities entailed or how they were performed—it is unclear whether this activity is transferrable to a work setting or whether it is indeed inconsistent with Plaintiff's other reported activities. (*See* AR 1248.)

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: Lack of Supporting Objective Medical Evidence

The remaining reason for discounting Plaintiff's subjective testimony—lack of supporting objective evidence—cannot form the sole basis for discounting symptom testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

In sum, the ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility. Accordingly, remand is warranted on this issue.

///

---

³ The Commissioner contends that Plaintiff made additional inconsistent statements, citing a treatment record from January 2014. (JS 33.) But the ALJ did not articulate this reason, and the Court cannot affirm on grounds on which the ALJ did not rely. *See Orn*, 495 F.3d at 630.

### B. The Court Declines to Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### C. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount the credibility of Plaintiff's subjective testimony. On remand, the ALJ shall reassess Plaintiff's subjective allegations. The ALJ shall

then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

V. **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 27, 2018

_Rozella A. Oliver_
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**